# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERINA TERESA PURCELLA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,[1]<br><br>Defendant.<br>_____/ | Case No. 1:18-cv-01010-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.   INTRODUCTION

On July 26, 2018, Plaintiff Serina Teresa Purcella ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on September 12, 2019). He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 11, 12.)

## II. FACTUAL BACKGROUND

On July 28, 2014, Plaintiff protectively filed an application for SSI payments, alleging she became disabled on December 8, 2003 due to post-traumatic stress disorder ("PTSD"), celiac disease, and heart problems. (Administrative Record ("AR") 151, 153–54, 174–75, 196, 210, 365.) Plaintiff was born on December 20, 1964 and was 49 years old on the date the application was filed. (AR 160, 195.) She has a high school education, past work experience in home patient care, and last worked full-time in 2004. (AR 16, 174–75, 196.

### A. Summary of Relevant Medical Evidence

#### 1. Community Psychiatry Associates

On August 29, 2014, Plaintiff presented to Community Psychiatry Associates for treatment of her anxiety and depression. (AR 523.) Plaintiff reported she suffered from depression since 2008 and her "depression ha[d] been severe lately due to [a] medical condition." (AR 523.) Plaintiff reported experiencing the following symptoms: "poor concentration"; "poor appetite due to celiac disease"; "hopelessness and worthlessness"; "persistent anxiety"; and "panic attacks any time she leaves home." (AR 523.) The examining physician recommended treatment including Zoloft and Trazodone, in addition to the other psychotropic medications Plaintiff was already prescribed. (*See* AR 523, 527.)

At a September 15, 2014 follow up appointment, Plaintiff reported panic attacks that involved chest pain, trouble swallowing, coughing, lightheadedness, nausea, and feeling like she was going to pass out. (AR 522.) Plaintiff stated these panic attacks happened "every time she leaves home." (AR 522.) On October 6, 2014, Plaintiff reported "irritability" and that she was "dwelling on her panic." (AR 521.) Plaintiff admitted she "hits her husband" and has done so "for many years." (AR 521.) This behavior was attributed to her family being physically abusive to her. (AR 521.) Plaintiff reported episodes of palpitations and dizziness, that her energy and

concentration were poor, and that she was "angry." (AR 521.) Plaintiff returned on October 24, 2014, and reported that she had low energy, high anxiety, and an "okay" mood. (AR 520.)

### 2. Jordan De-Paz, M.D.

On June 6, 2014, Plaintiff presented to family practice physician Jordan De-Paz, M.D., for treatment of dermatitis, celiac disease, and hypertension. (AR 616.) Dr. De-Paz recommended Plaintiff take Metropolol for her hypertension, Hydroxyzine for her dermatitis, and other medications for her anxiety. (*See* AR 619.) On July 3, 2014, Plaintiff returned for a follow up appointment after an emergency room visit. (AR 612.) Dr. De-Paz noted that Plaintiff was seen at the hospital for chest pain. (AR 612.) Dr. De-Paz directed Plaintiff to take Nitrostat for her hypertension and then return for a blood pressure check. (AR 615.)

Plaintiff returned on July 4, 2014, for her blood pressure check. (AR 610.) Dr. De-Paz found that Plaintiff's blood pressure was within normal limits and directed her to continue her medications and follow-up as needed. (AR 611.) On July 29, 2014, Plaintiff returned for treatment of "pain and itching in face" and other problems including anxiety disorder, hypertension, and celiac sprue. (*See* AR 606.) Dr. De-Paz noted that Plaintiff was prescribed to take Clonazeapm, Doxycycline Hyclate, Hyroxyzine, Isosorbide Mononitrate, Metroprolol, and Nitrostat daily. (AR 606.)

### 3. Michael Cohn, Ph.D.

On January 5, 2015, Plaintiff reported to psychologist Michael Cohn, Ph.D., for a consultative psychiatric examination. (AR 528–32.) Dr. Cohn noted that Plaintiff complained of anxiety with panic attacks and depression and that she suffered from these issues since she was "young." (AR 528.) Dr. Cohn noted that Plaintiff saw a psychiatrist every three weeks and may be seeing a counselor as well, although that was unclear and "[Plaintiff] herself does not seem to know." (AR 528.) Plaintiff reported that "everyone" in her family has mental illness. (AR 529.) Plaintiff reported she was able to take care of personal hygiene without difficulty, was able to pay bills and

handle cash appropriately, and was able to make decisions on a daily basis. (AR 529.) Dr. Cohn noted that Plaintiff's concentration, persistence and pace were "adequate." (AR 529.)

Dr. Cohn diagnosed Plaintiff with anxiety disorder and noted that Plaintiff's mood and affect were anxious. (AR 530–31.) As to Plaintiff's functional abilities, Dr. Cohn opined that Plaintiff was unimpaired in understanding, remembering, and carrying out simple or complex instructions; moderately impaired in relating and interacting with coworkers and the public; unimpaired in maintaining concentration, persistence, and unimpaired in completing day-to-day work activity; unimpaired in accepting instructions; unimpaired in maintaining regular attendance; and unimpaired in performing work activities. (AR 531–32.)

### 4. Ritu Malik, M.D.

On March 26, 2015, endocrinologist Ritu Malik, M.D. performed a consultative examination of Plaintiff. (AR 567–69.) Dr. Malik opined that Plaintiff could sit for at least six hours in an eight-hour workday; stand and/or walk for at least six hours in an eight-hour workday; lift and carry 50 pounds occasionally and 20 pounds frequently; and had no postural, manipulative, visual, communicative, or environmental limitations. (AR 569.)

### 5. Doris Karam, M.D.

On August 17, 2015, Plaintiff established care with internist Doris Karam, M.D. (AR 684.) Dr. Karam treated Plaintiff for abdominal pain and other complications following her cholecystectomy. (AR 684.) Dr. Karam noted that Plaintiff's abdomen was "very distended and very tender." (AR 688.) On November 23, 2015, Dr. Karam diagnosed abdominal pain and diarrhea and back pain. (AR 682.) On January 29, 2016, Plaintiff was seen in the emergency room for severe abdominal pain. (AR 758.) Plaintiff returned to Dr. Karam on February 24, 2016 for a follow-up visit after her hospitalization. (AR 672.) Dr. Karam indicated Plaintiff may suffer from ulcerative colitis and referred Plaintiff to a gastroenterologist. (AR 676.) On June 10, 2016, Dr. Karam assessed hematuria and referred Plaintiff to a urologist. (AR 670.)

4

On November 1, 2016, Dr. Karam treated Plaintiff for back pain. (AR 653.) Dr. Karam noted that Plaintiff had coccyx tenderness and diagnosed sacrococcygeal disorder. (AR 657.) Dr. Karam ordered a lumbar MRI for Plaintiff's back issues. (AR 657.) On November 29, 2016, Dr. Karam assessed coccydynia and lumbar radiculopathy. (AR 651.) On February 14, 2017, Dr. Karam ordered an MRI for Plaintiff's headaches and referred Plaintiff for a neuropsychiatry evaluation due to memory loss issues. (AR 643.)

On February 28, 2017, Dr. Karam completed a psychiatric medical source statement. (AR 577.) Dr. Karam opined that Plaintiff had marked limitation in her ability to maintain concentration and attention; withstand stress and pressures associated with work; understand, remember or carry out instructions; deal with the public; and moderate limitation in her ability to understand, remember and carry out instructions and relate and interact with coworkers. (AR 577.) Dr. Karam opined that Plaintiff's impairment and associated limitations were "permanent" and that Plaintiff was likely to miss more than half of the work days every month due to her mental issues. (AR 577.)

### 6. Leonard Rubin, M.D.

On April 14, 2017, internist Leonard Rubin, M.D. completed a medical source statement regarding Plaintiff's physical impairments. (AR 844.) Dr. Rubin opined that Plaintiff could lift and/or carry up to 20 pounds frequently and 50 pounds occasionally; could sit, stand, or walk for six hours in an eight-hour workday; and had some manipulative limitations in her left hand. (AR 844–50.) Dr. Rubin opined that Plaintiff had no other limitations. (*See* AR 847–50.)

### 7. Michael Lace, Psy.D.

On April 17, 2017, psychologist Michael Lace, Psy.D. completed a medical source statement regarding Plaintiff's mental impairments. (AR 834–35.) Dr. Lace opined that Plaintiff was moderately impaired in her ability to interact appropriately with the public, supervisors, and coworkers, and mildly impaired in all other functional abilities. (AR 834–35.)

### 8. State Agency Physicians

On January 16, 2015, Sandip Sen, M.D., a Disability Determination Services medical consultant, assessed Plaintiff's mental residual functional capacity (RFC).[3] (AR 204–05.) Dr. Sen opined that Plaintiff was moderately limited in her ability to work in coordination with or in proximity to others; interact appropriately with the public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers without exhibiting behavioral extremes; and had no significant limitation in all other functional abilities. (AR 205–206.)

Upon reconsideration on March 13, 2015, another Disability Determination Services medical consultant, A. Garcia, M.D., agreed with all of Dr. Ocrant's RFC findings and the limitations he found. (AR 218–20.)

### B. Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on January 16, 2015, and again on reconsideration on April 29, 2015. (AR 225–29, 233–37.) On May 29, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 240–42.)

On March 30, 2017, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 171–194.) Plaintiff testified that she experiences constant pain in her back, neck, hands, and legs. (AR 179.) She stated that her medications for her mental impairments make her "very drowsy, incoherent, dizzy, off balance" and that she showers "every other day" and has to sit down in the shower. (AR 180.) She testified that she sits in a recliner with

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

a heating pad on her lower back all day except when she is using the restroom because she is in so much pain. (AR 181.) Plaintiff takes Neurontin, Clonazepam, and Baclofen three times a day every day. (AR 182, 187.) She testified that she has anger issues due to PTSD stemming from sexual abuse from relatives early in life. (AR 188.) She stated she cannot work full time because her mental health medications "leave [her] incoherent and tired." (AR 191.)

A Vocational Expert ("VE") testified very briefly at the hearing. (AR 193.) The VE testified for the sole purpose of classifying Plaintiff's previous job. (AR 193.) The VE testified that Plaintiff's past work was as a home attendant, Dictionary of Occupational Titles (DOT) code 354.377-014, which was medium work with a specific vocational preparation (SVP)[4] of 3. (AR 193.) The ALJ then excused the VE and closed testimony. (AR 193.)

**C.     The ALJ's Decision**

In a decision dated May 22, 2017, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 151–62.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 153–61.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since the application date of July 28, 2014 (step one). (AR 53.) At step two, the ALJ found that Plaintiff had the following severe impairments: "colitis, status-post cholecystectomy"; "mild lumbar degenerative disc disease"; "coccydynia"; "cervical spondylosis, status-post anterior cervical discectomy at C5-C6"; anxiety disorder; panic disorder; and PTSD. (AR 153–54.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings (step three). (AR 154–56.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and

---

[4] Specific vocational preparation (SVP), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity … We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform medium work as defined in 20 CFR 416.967(c) limited to simple routine tasks with no more than occasional interaction with co-workers, supervisors, and the public, with no requirement for collaborative work.

(AR 156.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 158.) At step five, the ALJ found that Plaintiff could not perform past relevant work. (AR 160.) The ALJ found that Plaintiff was a younger individual age 18–49 on the date the application was filed, and subsequently changed age category to "closely approaching advanced age," had at least a high school education, and was able to communicate in English. (AR 160.) The ALJ then determined:

> Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [Plaintiff] has transferable job skills[.]
>
> Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform[.]

(AR 160–61) (citations omitted).

The ALJ determined that the Grids dictated a finding of no disability without considering additional exertional or non-exertional limitations. (AR 161.) The ALJ found that with Plaintiff's RFC, "[t]he unskilled occupational job base is not significantly eroded so long as [Plaintiff] is able to meet these basic mental demands" and Plaintiff, "with the decisional residual functional capacity herein, would be able to meet these demands." (AR 161.) Therefore, the ALJ found Plaintiff was not disabled. (AR 161.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 23, 2018. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1484.

## III.  LEGAL STANDARD

**A.  Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*,

180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review …" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 (citations omitted) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*,

454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins*, 466 F.3d at 885). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

**IV.   DISCUSSION**

Plaintiff contends that the ALJ erred in the following respects: (1) improperly relying upon the Grids, instead of obtaining testimony from a VE, regarding Plaintiff's social limitations and their effect on the occupational base; (2) failing to properly evaluate Dr. Rubin's opinion that Plaintiff's impairments cause manipulative and postural limitations; and (3) failing to include work-related limitations in the RFC consistent with Plaintiff's limitations and failing to offer any reason for discounting Plaintiff's limitations related to colitis. (Doc. 20 at 1–2.) The Court agrees with Plaintiff on the first issue and will remand the case for the ALJ to obtain further testimony from a VE.

**A.   The ALJ Erred at Step Five Relying Exclusively on the Medical-Vocational Guidelines And Neglecting to Obtain the Testimony of a VE Regarding the Effect of Plaintiff's Social Limitations on the Occupational Base.**

**1.   Legal Standard**

The Medical-Vocational Guidelines (the "Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. *See Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. *See Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985). Thus, the Commissioner generally may not

rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only. *See* 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e). "The use of the grids to find a claimant not disabled can be appropriate when both exertional and nonexertional limitations are alleged," but only where ALJ finds that the plaintiff's "nonexertional limitations do not significantly affect [her] exertional capabilities." *Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990), *overruled in part by Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. *See Burkhart v. Bowen*, 856 F.2d 1335, 1341 (9th Cir. 1988).

**2.     Analysis**

The ALJ included in Plaintiff's RFC that she was "limited to simple routine tasks with no more than occasional interaction with co-workers, supervisors, and the public, with no requirement for collaborative work." (AR 156.) At step five, the ALJ determined that Plaintiff's non-exertional limitations "have little or no effect on the occupational base of unskilled medium work." (AR 161.) The ALJ accordingly declined to obtain the testimony of a VE regarding Plaintiff's social limitations and the effect on her occupational base, and instead relied on the Grids to determine that Plaintiff was not disabled. (AR 161.)

Defendant contends that the "majority of the . . . Grid occupations are inherently compatible

with the ALJ's RFC limitation to unskilled occupations requiring limited interpersonal interactions" and thus the ALJ was entitled to rely on the Grids in this case. (Doc. 25 at 5.) The Court disagrees.

In *Terrill v. Berryhill*, No. 1:17-cv-00751-BAM, 2018 WL 4503429, at *3–4 (E.D. Cal. Sept. 19, 2018), the court reversed the ALJ's denial of benefits because the ALJ improperly relied on the Grids in a situation similar to this case. In that case, the plaintiff contended that the ALJ was required to ask a VE to consider her ability to perform medium jobs due to limitations to "no more than occasional face-to-face interaction with . . . the general public, coworkers and supervisors." *Id.* at *2. The court held that the ALJ erred in failing to obtain the testimony of a VE, reasoning that "where an ALJ specifically limits a claimant's ability to interact with coworkers and supervisors, such a limitation conflicts with the basic requirements of unskilled work and has the potential to significantly erode the occupational base." *Id.* at *4 (collecting cases).

The Court agrees with the analysis in *Terrill* and finds the case is nearly indistinguishable from this case. Like in *Terrill*, the ALJ here limited Plaintiff to "occasional interaction with co-workers, supervisors, and the public."[5] (*See* AR 156.) The ALJ in this case went even further, however, and limited Plaintiff to *no* collaborative work with others.[6] (*See* AR 156.) Because the ALJ limited Plaintiff to occasional interaction and no collaborative work with others, the ALJ was required to obtain the testimony of a VE as to the effect of those limitations on her occupational base, and erred in relying on the Grids to direct a finding of no disability. *See Terrill*, 2018 WL

---

[5] Defendant cites to *George v. Berryhill*, 727 F. App'x 287, 290–91 (9th Cir. 2018), and *Cowen v. Commissioner of Soc. Sec.*, 400 F. App'x 275, 277 (9th Cir. 2010), in support of its position. (Doc. 25 at 5.) *Cowen* is distinguishable from this case because there, the ALJ limited the Plaintiff only to "limited public contact." *See* 400 F. App'x at 277. Similarly, in *George* it is unclear what social limitations were imposed by the ALJ, although the decision implies, but does not state, that they consisted solely of "little contact with supervisors or coworkers." *See* 727 F. App'x at 291. Here, the ALJ limited Plaintiff considerably more extensively than in *Cowen* or *George*, to "simple routine tasks with no more than occasional interaction with co-workers, supervisors, and the public, with no requirement for collaborative work." (*See* AR 156.)

[6] This finding appears to conflict with the ALJ's finding that "a substantial loss of ability to respond appropriately to supervisors or coworkers would severely limit the potential occupational base" under SSR 85-15. (*See* AR 161.) The ALJ does not sufficiently explain why Plaintiff is limited to *no* collaborative work with others, when the ALJ found she is unlimited in her ability to respond appropriately to supervisors or coworkers, and can "occasionally" interact with supervisors and coworkers.

13

4503429, at *3–4; *see also Dubord v. Comm'r of Soc. Sec.*, No. 2:16-cv-1402-CMK, 2018 WL 1638866 (E.D. Cal. Apr. 5, 2018); *Little v. Commissioner of Soc. Sec.*, 780 F. Supp. 2d 1143, 1153–54 (D. Or. 2011); *Gonzales v. Astrue*, No. 1:09-CV-01306-GSA, 2010 WL 4392911 (E.D. Cal. Oct. 9, 2010); *Stark v. Astrue*, No. 07-6465, 2009 WL 2566723 (N.D. Cal. Aug. 18, 2009); *Shankles v. Astrue*, No. 09-1258, 2010 WL 5169077 (E.D. Cal. Dec. 14, 2010); *Galinski v. Astrue*, No. C11-516-RSL-JPD, 2011 WL 7070323, at *16 (W.D. Wash. 2011).

### B.     The ALJ's Error Was Not Harmless

The Court now turns to the analysis of whether this error by the ALJ was harmless. The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record). As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive―'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing

14

that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409 (citations omitted).

Here, the ALJ's error was not harmless because the error caused the ALJ to determine that Plaintiff was not disabled without the benefit of the testimony of a VE. The VE's testimony is crucial as it may determine Plaintiff's occupational base and whether she can perform any jobs at all, considering her non-exertional, social limitations. *See Terrill*, 2018 WL 4503429, at *4–5. The Court therefore also finds that the ALJ's error was not harmless, *see, e.g., Molina*, 674 F.3d at 1115 (citations omitted) (stating that an error is harmless "where it is inconsequential to the ultimate nondisability determination"), and the remand of this matter is appropriate.

**C.     The ALJ's Error Warrants Remand for Further Proceedings**

In her briefing, Plaintiff requests that the Court remand the case for the ALJ "to determine the impact of Plaintiff's social limitations on the available job base" after obtaining the testimony of a VE. (Doc. 20 at 12.)

Where the ALJ commits an error and that error is not harmless, the "ordinary … rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted).

Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

Here, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable because additional administrative proceedings would be useful. Further, Plaintiff does not request that the Court award benefits. On remand, the ALJ should address the error described in this Order by obtaining the testimony of a VE regarding Plaintiff's social limitations and the effect of those limitations on the occupational base.

Accordingly, the Court will remand this case for further proceedings.

**D.      The Court Declines to Determine Plaintiff's Remaining Assertions of Error**

As the Court finds that remand is appropriate for the ALJ to obtain the testimony of a VE regarding Plaintiff's social limitations and the effect of the limitations on her occupational base, the Court does not reach Plaintiff's remaining assertions of error. (*See* Doc. 20 at 13–16); *cf. Newton v. Colvin*, No. 2:13-cv-2458-GEB-EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments"); *Willmett ex rel. A.P. v. Astrue*, No. 2:10-cv-01201 KJN, 2011 WL 3816284, at *1 (E.D. Cal. Aug. 25, 2011) ("Because this legal error warrants remanding this matter for further proceedings, the undersigned does not reach the remainder of [the] plaintiff's arguments seeking reversal of the ALJ's and Appeals Council's decisions.").

## V.      CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Serina Teresa Purcella and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **January 6, 2020**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE